IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEBORAH L. JOHNSON,

          Plaintiff,                  No. CIV S-08-0225 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.             <u>ORDER</u>

_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Income Benefits ("DIB") under Title II the Social Security Act ("Act").  For the reasons discussed below, the court grants plaintiff's motion for remand.

I.  <u>BACKGROUND</u>

      Plaintiff, born May 13, 1960, applied for benefits on February 14, 2005.  Administrative Record ("AR") 57-59.  Plaintiff stated that she became unable to work on December 12, 2001, due to "fibromyalgia, back and neck problems." AR 57, 72, 79.

      At the April 13, 2006 hearing before administrative law judge ("ALJ") Richard D. Wurdeman, plaintiff appeared without counsel.  AR 182.  Plaintiff's husband was in attendance,

but did not testify.  AR 198.  Plaintiff testified that she finished the tenth grade, then earned

certificates in Police Dispatch and typing.  She testified that she most recently helped in a tax

preparation service in 2004, but left because the job was too pressured since she hadn't obtained

adequate training.  AR 188.  Prior to that, plaintiff ran an Espresso Coffee Cart that she and her

husband bought, but plaintiff quit after one summer because "I couldn't do it anymore . . . I had

to get out of my truck and then get into the Espresso Cart which I was towing behind my truck

and I would serve customers and then I would come back out of the Cart, get back into the truck

and then to different businesses. . ."  AR 189.  She testified that she had to stop "[b]ecause I

couldn't get in and out of truck and in and out of the cart constantly."  *Id.*

Her previous job was assembling explosives at BF Goodrich, which involved standing

most of the time, but also sitting at a table assembling parts.  AR 189-190.  She left that job due

to stress, and the failure of her supervisor to provide a stepping stool that would permit plaintiff

to reach a particular task.  AR 190.  A stepping stool was not provided, yet the supervisor

continued to write plaintiff up for bending materials as a result of the inadequate reach, which

increased the level of stress.  *Id.*   Plaintiff stated she previously worked at a series of assembler

jobs ("Production Assembly, Shipping, Receiving"), and prior to that was self-employed as a

ceramics maker.  *Id.*

Plaintiff testified that she has fibromyalgia, which causes her "pain throughout my body,

pain and stiffness," including shooting pains.  AR 191.  She stated that only Prednisone makes

her pain-free and able to "get around like a normal person," but her doctors will only prescribe it

for two weeks every six months, due to its side effects.  AR 191-192.  Meanwhile, plaintiff takes

Motrin, to reduce inflammation and help her osteoarthritis, but it doesn't help, and Vicodin,

which she only takes once or twice a week to help her relax and sleep.  AR 196-197.

Plaintiff stated that she first realized she has fibromyalgia after she quit her job with BF

Goodrich, when she was diagnosed by her doctor upon physical exam for complaints of flu-like

symptoms, severe pain, difficulty getting out of bed and walking.  AR 192.  Plaintiff stated that

1   she also has independent back and neck pain.  AR 192.  She indicated that an office wall

2   partition fell on her lower back, and her neck popped when she was washing her hair.  AR 183.

3       In describing her physical symptoms, plaintiff stated there are times when she can walk

4   okay, other times when she can barely walk.  AR 192.  Plaintiff uses a treadmill at home about

5   twice a week, for five to ten minutes each time, but it wears her out.  AR 193.  She also tries to

6   walk with her husband once or twice a week around the neighborhood, for about a quarter mile.

7   *Id.*  Plaintiff testified that her pain varies, "every day's different," "[t]omorrow I may be able to

8   sit in a chair for three hours [b]ut I have to constantly move, I can't just sit there."  AR 194, 193.

9       Plaintiff testified that she cooks and can do laundry, although her husband recently took

10  over the laundry "because my hip and my neck, ha[ve] really been bothering me," AR 193.

11  Plaintiff's husband does most of the vacuuming.  *Id.*  Plaintiff goes shopping about once a week

12  for groceries, usually with her husband, and can drive her car on short errands (e.g., post office,

13  gas station, grocery store) around her small town (Rio Vista).  AR 195-196.  Plaintiff stated that

14  she can carry a light bag of groceries.  AR 195.  However, plaintiff stated, "if I do something

15  today, I know, I'm going to hurt tomorrow."  AR 195.

16      Recreational activities include watching TV, reading, going out for a drive or a walk.  AR

17  193-194.  Plaintiff used to go fishing with her husband, and it was okay if she took a pillow and

18  blanket for sitting in the boat, but she hasn't gone fishing in a year.  AR 194.  The last long trip

19  they took together was two years previous, when her husband drove to Washington and back, but

20  it was not comfortable.  AR 195-196.

21      A vocational expert testified thereafter.  The ALJ posed the following hypothetical

22  question: "[L]et's assume we have an individual of Mrs. Johnson's age, vocational, educational

23  background.  Let's put her at the . . . sedentary level of exertion, with the freedom to stand on at

24  least a half hourly basis, for a short period . . . how would that erode the sedentary job market?"

25  AR 201.  The vocational expert responded that this limitation would erode a job base of

26  "millions" by "maybe fifteen percent," still leaving a job base of "millions."  *Id.*

3

The ALJ issued a decision on April 27, 2006, finding that plaintiff is not disabled..[1]  AR 19-22.  The ALJ made the following findings:

1.    Claimant met the disability insured status requirements of the Act on December 12, 2001, the date she stated she became unable to work.

2.    Claimant has not performed SGA [substantial gainful activity] since December 12, 2001.

3.    The medical evidence establishes that claimant has the severe impairment of fibromyalgia.

4.    Claimant's severe impairment does not meet or equal any listed impairment of Appendix 1, Subpart P of Social Security Administration Regulation No. 4.

5.    Claimant has an RFC [residual functional capacity] for employment at the sedentary exertional level with standing every 30 minutes.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n. 5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146, n. 5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

6.      Claimant's subjective complaints are not fully credible.

7.      Claimant does not retain the RFC to perform her past relevant work.

8.      Claimant is a younger individual with a limited education and past relevant work as a route truck driver, an explosives operator I, a ceramic maker and demonstrator, a warehouse person, and an assembler.

9.      Based upon claimant's RFC and vocational factors, there are jobs existing in significant numbers within the national economy that she can perform.

10.     Claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(f)).

On November 30, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 6-8.

II. ISSUES PRESENTED

Plaintiff contends that the ALJ erred by failing to: (1) fully develop the record, (2) properly assess plaintiff's onset date, (3) find credible plaintiff's subjective complaints of pain and functional limitations, and (4) pose a legally adequate hypothetical question to the vocational expert.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

1 | *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

2 | "The ALJ is responsible for determining credibility, resolving conflicts in medical

3 | testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

4 | 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

5 | interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

6 | *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

7 | IV. <u>DISCUSSION</u>

8 | Plaintiff contends that she was prejudiced by the ALJ's failure to meet his obligation to

9 | fully develop the record by: (I) clearly informing plaintiff of her right to representation, (ii)

10 | thoroughly questioning plaintiff about her symptoms and functional limitations, (iii) questioning

11 | plaintiff's husband rather than requiring plaintiff to do so, which she declined, and (iv) failing to

12 | pose an additional hypothetical question to the vocational expert that included all of plaintiff's

13 | symptoms and functional restrictions.

14 | Administrative law judges have an independent duty to fully develop the record in social

15 | security cases, *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir.1991), triggered by

16 | "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

17 | proper evaluation of the evidence," *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

18 | This duty is heightened when the claimant is not represented by counsel, requiring the ALJ to be

19 | especially diligent in seeking all relevant facts. *Id.* This requires the ALJ to "scrupulously and

20 | conscientiously probe into, inquire of, and explore for all the relevant facts. He must be

21 | especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are

22 | elicited." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). "The ALJ may discharge this duty

23 | in several ways, including: subpoenaing the claimant's physicians, submitting questions to the

24 | claimant's physicians, continuing the hearing, or keeping the record open after the hearing to

25 | allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

26 | ////

However, there is no constitutional right to counsel in Social Security proceedings and therefore "[l]ack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981) (citing, *inter alia*, *Hall v. Secretary of HEW*, 602 F.2d 1372, 1378 (9th Cir. 1979)).  Thus, plaintiff's general contentions about the ALJ's failure fully to inform plaintiff of her right to counsel do not demonstrate such prejudice.[2]  Morever, plaintiff received several written notices before the hearing describing these matters.  *See* AR 35-39, 41-45, 50-54.  In short, plaintiff's contention "there was no meaningful waiver of [plaintiff's] right to representation," Pl.'s Mem., at 11, is without merit.

However, the ALJ nonetheless had an obligation to develop the record.  Whether this was done is informed by the fact that had counsel been present, the attorney would have been able to question plaintiff's husband at the hearing, a role the ALJ refused to assume despite plaintiff's request and the availability of her husband, resulting in prejudice plaintiff alleges here.  Her husband attended the hearing but was seated outside the hearing room during plaintiff's testimony.  At the beginning of the hearing, the ALJ engaged in the following conversation with plaintiff:

| | |
|---|---|
| ALJ: | I understand you want your husband to be a witness? |
| CLMT: | Um-hum. |
| ALJ: | You call him in and you can question him, ask him questions about, designed to bring out the things you want brought out through him. |
| CLMT: | Okay. |
| ALJ: | Do, do you understand what I mean? |
| CLMT: | Kind of, I do, yeah. |
| ALJ: | Yeah, Like a lawyer does like you see on TV, what's your name, who are you, I'm your husband, how long have you, we live together and or whatever, I don't know what you want to ask him. |
| CLMT: | I don't either, but, I can do my best, I guess. |

---

[2]  She asserts that "the ALJ failed to explain how an attorney could aid in the proceedings; failed to inform Ms. Johnson of the possibility of free legal counsel; failed to explain the nature of a contingency arrangement; and failed to offer Ms. Johnson additional time within which to secure the services of an attorney or representative"  Plaintiff's Memorandum, at 10.

AR 185-186.  At the conclusion of plaintiff's testimony, before the vocational expert testified, the ALJ had this conversation with plaintiff:

| | |
|---|---|
| ALJ: | Do you want to call your Husband, you, you, you want him as a witness, so I don't know what you want to ask him, but? |
| CLMT: | Can I not use him as a Witness? |
| ALJ: | Oh, yeah – |
| CLMT: | I mean – |
| ALJ: | – yeah, yeah. |
| CLMT: | – I just don't feel comfortable asking him questions, I mean – |
| ALJ: | I won't go into that, but, okay.  Yes, it's your option. |
| CLMT: | Okay.  I mean, you're more than welcome to bring him in and ask him questions, I just, I don't know if I can do it – |
| ALJ: | No, I – |
| CLMT: | – like I'm supposed to. |
| ALJ: | You want to bring him in or you don't want to bring him in? |
| CLMT: | I don't. |
| ALJ: | You don't? |
| CLMT: | No. |
| ALJ: | Okay.  Then we go right to Mr. Davis [the vocational expert]. |

AR 196-197.

The court initially notes that "[a]dministrative procedures 'should be understandable to the layman claimant . . . and not strict in tone and operation.'"  *Key v. Heckler,* 754 F.2d 1545, 1551 (9th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 400, 401 (1971)).  It is well settled that the testimony of friends and family members who are in a position to observe a claimant's symptoms and daily activities is probative evidence.  *See, e.g., Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  Moreover, this is the very type of case for which lay testimony is *required*.  "[T]he Commissioner's regulations require the ALJ [to] consider lay witness testimony in certain types of cases.  *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996); SSR 88-13.  That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence.  *See id.*  Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored.  Therefore, in these types of cases, the ALJ is

1    required by the regulations and case law to consider lay witness evidence." *Lane v.*

2    *Commissioner of Social Security*, 2009 WL 385763, 18 (E.D. Cal. 2009).

3        Significantly, there is no third party lay evidence in this case.  Given the nature of

4    plaintiff's claim, and because the denial of her application rested on an unfavorable assessment

5    of her credibility, due largely on her daily activities, *see* AR 21,[3] the ALJ's failure to question

6    plaintiff's husband when plaintiff plainly wanted the ALJ to do so is both contrary to authority

7    and inherently prejudicial to plaintiff.  The testimony of plaintiff's husband is essential to

8    properly assess plaintiff's subjective complaints of pain and limitations, and the extent of her

9    daily activities.

10       Magistrate Judge Sandra Snyder, of this district, recently explained the nature of

11   fibromyalgia:

12       [F]ibromyalgia is a rheumatic disease that causes inflammation of the fibrous
         connective tissue components of muscles, tendons, ligaments, and other tissue;
13       common symptoms include chronic pain throughout the body, multiple tender
         points, fatigue, stiffness, and sleep disturbance that can exacerbate the cycle of
14       pain and fatigue associated with the disease. *Benecke v. Barnhart,* 379 F.3d 587,
         589-90 (9th Cir.2004).  It has been recognized that medical books and web sites
15       note that one of the main symptoms of fibromyalgia is the presence of multiple
         tender points, or pain when slight pressure is applied to various parts of the body.
16       *See, Rogers v. Astrue,* 2008 WL 850131, *9 n. 6 (E.D. Cal. March 28, 2008). It is
         further recognized that the cause of fibromyalgia is unknown; there is no cure; the
17       disease is diagnosed solely on the basis of patients' reports of pain and other
         symptoms based on a set of diagnostic criteria involving a requirement of a
18       flinching reaction by the patient when firm pressure is applied to at least eleven of
         eighteen fixed locations on the body; and there are no laboratory tests recognized
19       as confirming the diagnosis. *Benecke v. Barnhart,* 379 F.3d at 590; *Rollins v.
         Massanari,* 261 F.3d 853, 855 (9th Cir.2001) (quoting *Sarchet v. Chater,* 78 F.3d
20       305, 306 (7th Cir.1996)). Rheumatology is the relevant specialty for fibromyalgia.
         *Benecke v. Barnhart*, 379 F.3d at 594. It has been held to be error to require
21       objective evidence for fibromyalgia, a disease that eludes objective measurement.
         *Id*. at 594 (quoting *Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir.2003)).

22

23

24       [3] The ALJ found in pertinent part:  "The claimant testified that she uses a treadmill twice
     a week for five or 10 minutes, does housework, cooks, does laundry, watches television, reads
25   novels, shops, and drives around town.  After considering the other evidence of record described
     above, I find that the claimant's allegations of her limitations caused by her subjective
26   complaints are not fully credible and would not limit her ability to perform a restricted range of
     sedentary work. . ."  AR 21.

1  *Cota v. Commissioner of Social Security,* 2009 WL 900315, 9 (E.D. Cal. 2009).  As with

2  Chronic Fatigue Syndrome (or "CFS"), the symptoms of fibromyalgia are characteristically

3  episodic, and the disease commonly manifests in activities that are "sporadic and punctuated

4  with rest." *Reddick v. Chater*, 57 F.3d 715, 722 (9th Cir. 1998) (CFS); *Wilson v. Commissioner*

5  *of Social Security*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (fibromyalgia and CFS)(citing

6  *Reddick*).  "Occasional symptom-free periods-and even the sporadic ability to work-are not

7  inconsistent with disability."  *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1995).  "[D]isability

8  claimants should not be penalized for attempting to lead normal lives in the face of their

9  limitations. . . . Only if the level of activity were inconsistent with Claimant's claimed limitations

10  would these activities have any bearing on Claimant's credibility."  *Reddick*, 57 F.3d at 722

11  (citations omitted).

12      The court is cognizant of the narrow range of work that is at issue.  The ALJ found

13  plaintiff's fibromyalgia to be a severe impairment, but found that she could perform sedentary

14  work that allows her to stand every 30 minutes.  It is plaintiff's contention that she cannot

15  perform gainful employment even within these limited parameters because, *inter alia,* as set

16  forth in her testimony and pain questionnaire, AR 79-80, she has "good days" and "bad days."

17  The assessment of a claimant's residual functional capacity includes consideration of her ability

18  to perform sustained physical work, that is, "work activity on a regular and continuing basis."

19  20 C.F.R. § 416.945(b); *see also* Social Security Ruling (SSR) 96-8p ( "RFC is an assessment of

20  an individual's ability to do sustained work-related physical and mental activities in a work

21  setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or

22  an equivalent work schedule").  The testimony of plaintiff's husband is essential to the ALJ's

23  assessment of this issue.

24      The court therefore finds that the ALJ failed to fully and fairly develop the record by

25  failing to obtain the testimony of plaintiff's husband, who plaintiff had present at the hearing and

26  intended to have testify.  This was the ALJ's primary responsibility, not that of the unrepresented

1  plaintiff.  Placing the responsibility on plaintiff to ask the questions after she clearly stated that

2  she did not know how does not satisfy an ALJ's obligation to fairly and adequately develop the

3  record.  It was prejudicial under these circumstances, where plaintiff's disability claim turns on

4  the credibility of her own statements.  The omission renders inadequate not only the ALJ's

5  assessment of plaintiff's credibility, but his hypothetical questions to the vocational expert.

6  Remand is therefore required for a new hearing that includes the testimony of both plaintiff and

7  her husband, and any other lay witness having relevant percipient knowledge that she wishes to

8  testify.

9        Plaintiff additionally contends that the ALJ ignored significant medical evidence of

10  record that was generated during the period between her alleged onset date of December 12,

11  2001, and her last date insured of September 30, 2003.  *See* AR 127-154.  The argument appears

12  well taken.  The ALJ references only two pages of this evidence (relative to "normal nerve

13  conduction studies" in June 2002), and indicates that this is the *only* evidence of record for the

14  relevant period.  AR 20.  However, as plaintiff notes, there are several reports for this period,

15  commencing July 2001, and they are generally consistent with plaintiff's complaints.  *See*, *e.g.*,

16  AR 150 (July 2001 prescriptions for Naproxen, Robaxin, Vicodin, and suggested use of moist

17  heat to treat neck pain and trapezius muscle spasm); AR 139 (November 2001 treatment note

18  referencing spinal MRI demonstrating C6-7 protrusion, consistent with plaintiff's complaints of

19  radiculopathy); AR 135 (January 2002 treatment note for "follow up fibromyalgia," continuing

20  prescription medications of Elavil and Vicodin).  These records also underscore the ALJ's failure

21  to consider plaintiff's independent complaints of neck and back pain due to injury and/or as

22  supported by imaging reports.

23        For the foregoing reasons, this case will be remanded for a new hearing and a new

24  decision that is consistent with these findings.

25  ////

26  ////

11

V. <u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. Plaintiff's motion for remand is granted;

3. The Commissioner's cross-motion for summary judgment is denied;

4. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further development of the record and further findings addressing the deficiencies noted above; and,

5. The Clerk is directed to enter judgment in favor of plaintiff in accordance with this order.

DATED:  September 29, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE